EBEN T. ELDREDGE *vs.* FRANCIS A. SMITH & another.

In an action to recover damages for a breach of a contract, on the part of the owners of a
fishing ♦chooner, to employ the plaintiff as her master for a fishing season, evidence is
admissible, in his behalf, on the question of damages, to show that he had engaged his
crew on fixed wages, as a part of their compensation, if there was neither any agreement
between the parties that the crew should be paid only by a division of the fish, nor any
intention in making the contract to defraud the government by claiming bounty. Evi-
dence is also admissible to show a custom so to engage and pay men.

In such action, the testimony of an expert in the fishing business is competent to show the
average of the results of similar voyages in that season, which he had settled and ad-
justed, without the production in court of the books and papers showing the settlements;
and in such testimony voyages from Cape Cod as well as from Beverly may be included,
although the contemplated voyage of the plaintiff was to be from Beverly, and the usual
terms of adjusting voyages from the two places differ in some respects, if it appears that
the defendants' schooner more nearly resembled the fishing vessels of Cape Cod than
those of Beverly, and the difference in the terms of adjusting the voyages from the two
places was taken into consideration by the witness, in stating the results.

If in such action it appears that the plaintiff had engaged a crew on fixed wages, as a part
of their compensation, and it does not appear that anything was said between him and
the defendants about bounty from the United States, the master's portion of the usual
bounty which the schooner, with a proper crew and on a proper voyage, would be entitled
to receive, should not be included as a distinct element of damages.

CONTRACT brought to recover damages for a breach of a con-
tract on the part of the owners of a codfishing schooner of Bev-
erly to employ the plaintiff as her master for a fishing season.
The first count in the declaration alleged that the plaintiff's
compensation was to be the lay usual in codfishing vessels sail-
ing from Beverly, including a share of the bounty to be received
from the United States. The second count alleged that it was
to be so much as the plaintiff's services should be reasonably
worth.

At the trial in the superior court, before *Brigham,* J., the plaintiff testified that he was to go as master on the same terms as other masters went; that, at the time of making the agreement, which was made at Beverly, the defendants requested him to engage a crew upon Cape Cod, and to get good men if he had to give a little more than anybody else ; that he expected to get the bounty ; and that he engaged seven men, besides the cook, most of whom were to have certain fixed wages per month, as well as a fractional portion of a share. Evidence was also admitted, against the defendants' objection, that it was a general usage and custom for codfishing masters and crews from Cape Cod, Beverly or elsewhere, in the engagement of the crew, to agree that, in the part of the proceeds of the voyage coming to the master and fishermen, while the master has a full share, some of the fishermen shall have certain stipulated fractional parts of shares respectively, after deducting proper expenses, and others certain sums of money with or without fractional parts of shares, and that it was customary to authorize the master to receive the whole of the proceeds of the voyage coming to the master and fishermen, and to pay to each man in this way ; and that the voyages of several codfishing vessels sailing from Beverly in 1863 and 1864 were settled in the same way.

It did not appear that anything was ever said about bounty, or that the defendants ever before the commencement of this action made any objection to this mode of engaging or agreeing with the crew. Before the time for the plaintiff or crew to render themselves on board, the defendants sold the schooner, from motives of profit. The plaintiff duly offered to perform the contract on his part.

The plaintiff offered the testimony of an expert in the codfishing business, residing at Cape Cod, as to the average results of codfishing voyages in 1864 which he had settled or adjusted at Cape Cod, and as to what such results would give for a master's share or compensation upon the terms and lay usual at Beverly, which had been before testified to in the trial, and stated to the witness in the questions. Evidence had previously been introduced tending to show that the defendants' schooner

was of similar model and build with most of the Cape Cod cod-fishing vessels, being half sharp, and different from the model and build of most of the Beverly vessels, which were blunt, and that the superior sailing qualities of vessels of the former description were of value in securing fish. The defendants objected to this evidence, without the production of the books and papers showing the settlements; but it was admitted.

The defendants also objected to evidence of average results of codfishing voyages from Cape Cod in 1864, and contended that only the average results of such voyages from Beverly were admissible. It was in evidence that the terms on which a codfishing voyage was settled between the master and owners in 1864 were in some respects different at Beverly from those at Cape Cod, but these differences, having been testified to, were stated in hypothetical questions and taken into account and allowed by the expert in giving and applying such results with reference to the master's share or compensation.

The defendants requested the court to rule that, upon the contract set forth and testified to by the plaintiff, which they contended was for a voyage to secure the bounty, the plaintiff had no right to employ men upon wages, and if he did so employ men he never was in a condition to fulfil his part of the contract, and the defendants were discharged from the same. But the judge declined so to rule, and instructed the jury that the fact that the plaintiff had contracted with a crew upon terms which, as between them and the owners, would prevent the obtaining of fishing bounty, would not excuse the defendants from furnishing to the plaintiff such a vessel as they agreed to give him.

The defendants then requested the court to rule that, upon the foregoing facts, the master's proportion of the usual bounty to which, with a proper crew on a proper voyage, the schooner and her crew would have been entitled must be excluded as an element of damages in this case; but the judge declined so to rule.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*G. Marston*, for the defendants.

*P. H. Sears*, for the plaintiff.

GRAY, J.   1. By the statutes of the United States, the fishing bounty is to be paid only when all the crew of the vessel share in the results of the voyage.   U. S. Sts. 1813, *cc.* 2 ;  35, §§ 5–8 ; 1819, *c.* 89 ;  3 U. S. Sts. at Large, 2, 51, 52, 520.   *United States* v. *Nickerson,* 17 How. 210.   *Crowell* v. *United States,* 21 Law Reporter, 466.   But although no bounty is allowed unless the vessel is sailed on shares, yet a contract for a fishing voyage, on which the crew are to be paid by wages, is perfectly lawful. *Baker* v. *Carey,* 19 Pick. 496.   In the agreement between the plaintiff and the defendants, as given in evidence, it was not stipulated that the crew should be shipped on shares ; and no objection of variance between the declaration and the evidence was taken.   The plaintiff indeed testified that " he expected to get the bounty."   But it is expressly stated in the bill of exceptions that " it did not appear that anything was ever said about bounty ; " and there is nothing to show that the parties, in making their contract, intended to defraud the government by claiming a bounty to which they were not by law entitled.

2. The evidence of the engagements which the plaintiff made with his men, for the voyage for which the defendants had agreed to employ him as master, was therefore admissible for the purpose of showing the amount of the damages resulting to the plaintiff from the defendants' breach of contract.

3. The general usage as to the mode of engaging and paying the crews of codfishing vessels was rightly admitted, as evidence tending to show the kind of voyage which the parties contemplated.   *Thompson* v. *Hamilton,* 12 Pick. 425.

4. The testimony of an expert to the average of the results of similar voyages was appropriate and usual evidence, according to the practice of the courts of this state, and of the United States in this district, to show the value of the voyage for which the defendants had agreed to employ the plaintiff.   The production of the books and papers containing the settlements of those voyages was not essential to the competency of this testimony, and would have tended to the needless multiplication of issues. The including, in these estimates of the results of voyages, of fishing vessels from Cape Cod, as well as Beverly, was

unobjectionable, inasmuch as it appeared that the defendarts' vessel more nearly resembled the former than the latter, and that the difference in the mode of making up the settlements at the two places was taken into consideration by the witness in stating the results.

5. Evidence of the master's proportion of the bounty on a voyage of this vessel and crew according to the laws of the United States might perhaps be admissible, in connection with the other evidence, to assist the jury in estimating the value of the voyage.   But it was in no just sense a distinct element of damages.   The refusal of the judge to instruct the jury that this must be excluded as an element of damages, without, so far as appears by the bill of exceptions, giving them any equivalent instructions, was erroneous; and the exceptions on this point must have been sustained, but for the offer of the plaintiff at the argument, in case the ruling should be held to be erroneous in this respect, to deduct from the verdict the amount of such bounty, which can be estimated from the facts stated in the bill of exceptions.   Upon such remission, the judgment will be

*Exceptions overruled.*