## S. J. FLEMING v. WILMINGTON AND WELDON RAILROAD COMPANY.

*Action for Damages—Issues—Railroad Embankment—Culvert —Diverting Watercourse—Natural Waterway.*

1. When the issues submitted in the trial of an action are raised by the pleadings, and, with the findings thereon, form a sufficient basis to proceed to judgment, no exception to them is available unless it appear that there was some view of the law arising out of the testimony which the party appealing was precluded from presenting for the consideration of the jury.

2. The damage due to the erection of a waterway over a running stream at the point of its intersection with a railroad, is considered, when the work is skillfully done, to be included in the cost and valuation of the easement, or to have passed as incident to the grant of it, and when it is admitted that it was so constructed, neither the owner of the land nor the proprietor of the tract above can maintain an action for damages caused by placing the structure across the stream.

3. In such case, on the trial of an action for damages, testimony to prove on what principle the commissioners estimated damages in the condemnation proceedings is immaterial and incompetent.

4. Admissions by counsel, in the course of a trial, of facts to which the issues relate, preclude such counsel from excepting, after the trial, to instructions to the jury to answer the issues in accordance with such admissions.

5. Although the diversion of a natural stream from its channel by a railroad company is a trespass when it is not necessary to the skillful construction of the road to change its course, yet the authority to divert surface water accumulating at a proper embankment, the building of which was necessarily contemplated by those who assessed or agreed upon the value of the right-of-way, and to carry it in side ditches, constructed on the right-of-way, to its natural outlet or to some natural outlet adequate to receive it, is included in the easement and damages therefrom covered by the estimate of such cost.

6. When, in the trial of an action for damages for the diversion, by a railroad embankment, of the water of a stream from its natural course, there was conflicting evidence as to whether a certain "Barnfield Branch" was a natural watercourse, it was error in

the trial Judge to instruct the jury that it was the duty of the Company to build a culvert over such ravine, and it was also error to express the opinion that the said branch was not a natural watercourse.

CIVIL ACTION, tried before *Hoke, J.,* and a jury, at December Term, 1893, of PITT Superior Court.

The plaintiffs alleged that they were the owners of a tract of land through which the Scotland Neck and Greenville branch of the defendant the Wilmington and Weldon Railroad Company's road was constructed, and that they, the plaintiffs, before the construction of said branch road, had, by means of various ample and sufficient ditches leading into the canal belonging to the Great Swamp Canal Company, said canal aiding largely in said drainage, carried the waters into Tar River, a natural watercourse.

Three causes of action were set out, to wit:

*First.* (1.) That in the construction of said road the defendant negligently caused to be thrown up over and upon the low lands of the aforesaid swamp an embankment, to the height of four feet, leaving no sufficient opening or culverts for the passage of the bulk of water that usually flows down said swamp; (2) That the space left at the aforesaid canal by the defendant is and has been entirely too little space for the passage of the waters of said swamp, so that the same becomes dammed and choked up, and the waters thereof ponded back upon the lands of the plaintiffs to its great injury and diminished productiveness for purposes of agriculture; (3) That by means of said embankment and said negligent culverting, the defendant has within the three years before the bringing of this action, negligently and unlawfully caused the waters of the aforesaid swamp (which annually, or almost every year, overflow the aforesaid canal and take the broad course of said swamp thus passing off in in a very short while) to be ponded back upon the lands of the plaintiffs, to the very great injury of the land and the crops growing thereon, to wit, five hundred dollars.

*Second.* That in the construction of its said road, the defendant negligently and unlawfully filled up two of the plaintiffs' ditches, one of said ditches in two places, thereby ponding water on the lands of the plaintiffs, rendering the same, which had heretofore yielded good crops, worthless, or nearly so, for purposes of agriculture; (2) That by reason of said obstruction to the plaintiffs' ditches, the defendant has, within the three years next before the bringing of this action, negligently and unlawfully caused the waters of the aforesaid swamp to be ponded back upon the lands of the plaintiffs, to the very great injury of the land and the crops growing thereon, to wit, $500.

*Third.* (2) That in the construction of its said road, the defendant dug, or caused to be dug, a ditch on each side of the bed of said road, whereby a large and unusual volume of water is directed from its natural course and turned upon the lands and into the ditches of the plaintiffs, thereby flooding the land and filling the ditches with sand and mud, rendering the land, which heretofore yielded good crops, worthless, or nearly so, for purposes of agriculture; (3) That by reason of said negligent direction of waters, the defendant has, within the three years next before the bringing of this action, negligently and unlawfully caused the aforesaid lands to be flooded with water after every considerable rainfall, to the very great injury of the land and the crops growing thereon, to wit, $500.

Wherefore, the plaintiffs pray judgment—

For $1,500 damages to the land and crops, the costs of this action, and for other and further relief.

The defendant, in its answer, did not admit the allegations of plaintiffs' ownership of the land, and averred that in the construction of the said extension, it became necessay to dig a small ditch along the roadbed for the proper drainage of the same, but they deny that they did so wrongfully, or that they directed a large or unusual volume of water from its

natural course, or that they ponded back any water on plaintiffs, or that they caused the lands of the plaintiffs to be overflowed, or in this or any other way injured the land of the plaintiffs.

Further answering, the defendant said—

"1. That in 1889, at the earnest request of a large number of the people of Pitt County, they consented to extend the Scotland Neck branch of the Wilmington and Weldon Railroad to the town of Greenville. That for this purpose they employed skilled engineers and mechanics, and used the very best material. That in building said road, it became, and was, absolutely necessary to dig upon each side a ditch, or drain, for the purpose of draining the roadbed, in order to render it suitable and safe for transportation purposes, and without said ditches or drains it was utterly impossible to construct a proper and safe roadbed. That such ditches or drains are cut only where they were necessary, and of such dimensions only as were absolutely essential. That they were cut in a workmanlike manner, and with the least possible damage, if there was any, to the adjoining lands.

"2. That the said extension is one of the best roads in the State and a great public convenience, and built upon the lands of the defendant, and the ditches were dug upon the lands of the defendant.

"3. That in its construction, the defendant has done nothing that it was not fully authorized to do, and, if any damage has resulted, defendant is not responsible therefor."

The following were the issues submitted to the jury, and the responses thereto:

"1. Are the plaintiffs the owners and in possession of the land described in the complaint?   Yes.

"2. Is Great Swamp a natural watercourse and drainway for said land?   Yes.

"3. Did the defendant wrongfully and negligently construct its road across said swamp so as to cause the waters

thereof to be ponded back and sob and injure plaintiffs' land?  Yes.

" 4. Has defendant wrongfully and negligently filled up and obstructed plaintiffs' ditches, causing injury to plaintiffs' land?  Yes.

" 5. Has defendant wrongfully and negligently diverted the water and drainage of Barnfield branch, and turned the same on plaintiffs' land, causing damage thereto?  Yes.

" 6. What damage have the plaintiffs sustained by the wrongful acts of the defendant?  $200."

Upon the pleadings, the plaintiffs and defendant tendered issues, the issues tendered by defendant being as follows:

" 1. Are the plaintiffs the owners of the land described in the complaint?

" 2. Were the culverts placed by the defendant on the lands described in the complaint sufficient for the passage of the bulk of water that usually flows on said land?

" 3. Was the erection of the embankment on the lands described in the complaint necessary to the construction of defendant's roadbed?

" 4. If the defendant did not place sufficient culverts, or the erection of the embankment was not necessary, what damage has plaintiffs sustained thereby?

" 5. Did the defendant negligently and unlawfully fill up the ditches of the plaintiffs?

" 6. If yes, then did defendant supply other ditches or drainways equally good and available?

" 7. What damage has plaintiffs sustained thereby?

" 8. Did the defendant divert any natural waterway and turn it upon plaintiffs' land?

" 9. Is Barnfield branch, as described, a natural waterway?

" 10. What damage has plaintiffs sustained thereby?"

The Court declined to submit the issues tendered by the parties, and submitted the issues set out in the record and responded to by the jury.

Defendant excepted to refusal of Court to submit the issues tendered by them.

The plaintiffs were the widow and children, heirs-at-law and legatees, etc., of one Peter Fleming, deceased.

There was evidence tending to show that Peter Fleming, deceased, had occupied and possessed the land described in the complaint, claiming to own same from fifty to sixty years continuously to his death; which occurred four or five years before the action was commenced. That after the death of Peter Fleming, his widow Sidney Fleming, continued to occupy the land as before down to the time of trial, one or two of plaintiffs living with her.

The will of Peter Fleming was also introduced, properly proven and recorded, in which the land in complaint was willed to plaintiff Sidney Fleming, his widow, for and during her natural life, and at her death remainder to some of his children, who were made parties plaintiff.

It was admitted that such will gave a life estate in the land described in the complaint to plaintiff Sidney Fleming.

In the examination of one Reeves, for defendant, who was one of the commissioners to appraise the land under said proceedings, the defendant proposed to prove by said witness, that the commissioners in estimating damage to said land, did consider and estimate the damage to same likely to be caused by ponding or interruption to water caused by construction of trestle across Great Swamp Canal, and asked a question to this effect or one of similar import.

Question was objected to by plaintiff. Objection sustained and defendant excepted.

Defendant in apt time requested the Court to put its instructions to the jury in writing. Defendant further filed nineteen requests for instruction by the Court at or about the close of the evidence, but this last request was not signed by counsel.

The defendant made no other exception to the charge at

the time, but in its case on appeal, tendered in apt time, and filed specific exceptions to the Judge's charge. In the course of the trial, counsel in behalf of defendant, admitted plaintiffs owned and were possessed of the land, and the Court directed the jury to answer the first issue, "Yes."

Counsel for defendant further admitted that Great Swamp Canal was a natural watercourse and drainway of plaintiffs' land, and the jury was directed to answer second issue "Yes."

Counsel for plaintiffs and defendant both admitted and consented in open Court at close of charge, that the jury need not respond to each amount of damage separately if more than one cause of damage was found to exist, but that the jury might find the aggregate damage for all causes and respond only to the 9th issue on that question.

His Honor charged (among other things) as follows :

" 1. The first issue addresses itself to the ownership of the land, and on this issue I charge you, if you believe the evidence, the legal title and right to possess the land for purposes of this action is in plaintiff Sidney Fleming, widow of Peter Fleming, and on the evidence, if you believe it, your answer to the first issue should be 'Yes.' Defendants in their argument, consent to this answer to this issue.

" 2. On second issue defendant admits that Great Swamp is a natural watercourse and drainway for said land, and on this admission and the evidence, you will answer the second issue 'Yes.'

" Then there are three issues on the question as to whether defendant has, in constructing its road, done the plaintiffs actionable wrong. There are three causes or sources of damage alleged by plaintiffs. One as to the obstruction across Great Swamp itself, the main swamp. One in filling up plaintiffs' ditches, one on north side of canal near Mrs. Fleming's, and on south side of canal, at point on map E and B. And third cause in diverting or turning the waters of what is termed Barnfield branch from its natural outlet,

three hundred yards below road, and carrying its waters by lateral ditches across a ridge or hill on to plaintiffs' land, so causing damage to same.

"The third issue in number of those submitted, is as to character of structure across main swamp, and the rule as to defendant's responsibility in this respect, I charge you to be as follows:

"The defendant is required to so construct its road or trestle across said swamp as to leave an opening that will carry off the waters of said swamp without additional damage or injury to lands above in all ordinary times, also such usual rainfalls as are likely to occur in the course of the seasons, even such heavy rains as are likely to occur, and which could and should have been foreseen and provided against.

"And if the defendant, in constructing its road, has failed to provide an opening of this nature, and damage has resulted thereby to plaintiffs' land, this would be an actionable wrong by defendant, and jury should answer the third issue 'Yes.'

"The burden is on plaintiff to satisfy the jury in this respect by the greater weight of evidence—that the defendant has failed to make an opening of this character, and that damage has thereby resulted to plaintiffs' land, and if they have so satisfied you, you should answer third issue 'Yes.'

"If plaintiffs have failed so to satisfy the jury,—if defendant has left an opening sufficient to carry off water in ordinary times and such rains as are likely to occur, you should answer third issue 'No,' or if there has been no damage done to plaintiffs' land, answer should be ' No.'

"The defendant is not responsible for damage resulting from extraordinary rains and freshets, and if plaintiffs' damages, if he has any, only arise from such rains, answer to third issue should be 'No.' Now applying this rule to the evidence in this case, how say you in answer to this third

issue?    Has defendant left a sufficient opening, or is plain-
tiffs' land damaged by the structure as it exists. (Court here
referred to evidence in the cause on this issue for plaintiffs and
defendant.)

"Now this is the evidence on this issue so far as I recall it,
and I will remind the jury it is only given by the Court to
aid the jury, and to make the charge pertinent to the evi-
dence in this issue: If you recollect the evidence different
from the way I recite it, or more or less, you will act on your
own memory, for by our law the jury are made the judges
of what the witnesses say and what credit you will give to
the evidence.

"On the fourth issue, as to injury claimed by the ditches,
you are instructed that defendant in crossing plaintiffs'
drain ditches which are properly placed for purposes of
drainage, and so used, should have a sufficient opening under
their roadway to permit the ditches to effect their purpose,
provided it can be done consistent with the safety and proper
construction of their roadbed and its protection. The burden
here is also on plaintiffs to show a failure on the part of defen-
dant, and if jury are satisfied that the defendant in build-
ing their road filled plaintiffs' ditches, when the proper
building of their road did not require it, and that this has
caused damage to plaintiffs' land, answer to this issue should
be 'Yes.' But if defendant has not filled up the ditches,
answer to this issue should be 'No;' or answer to issue. 'No' if
defendant has done plaintiffs' land no damage. And if
defendant in filling up the ditches has left an open way
along its right-of-way, and permitted and made ditches
affording equally good drainage, answer to issue should be
'No;' or if from the evidence you should conclude that these
ditches had been abandoned by plaintiffs, and were not used
for purposes of drainage, there was no injury caused by fill-
ing up such ditches, and issue should be answered 'No.' I am
asked to charge you, by defendant, that if these ditches

appeared to be abandoned, the road had a right to fill them up, but I do not think this a proper charge. If they were used for purposes of drainage, being properly placed, the fact that they were imperfectly kept open should be considered in the question as to amount of damages, but would not justify defendant in filling them and closing plaintiffs' drain-ways. Now consider the evidence under these rules, and say on this fourth issue whether defendant has done plaintiffs an actionable injury in reference to ditches. If you are so satisfied by greater weight of evidence you should answer this issue 'Yes,' and if not, the issue should be answered ' No.'

" In considering the question of damage by the ditches you will not take into your estimate the effect of acts in reference to Barnfield branch, as there is a separate issue as to this.

"And on the fifth issue, as to Barnfield branch, the burden is on the plaintiffs to establish that the defendant had wrongfully diverted the water from the place termed Barn-field branch from its natural outlet and onto the plaintiffs' land, and has thereby caused damage to such lands. I am asked, in this connection, to define to the jury what is a nat-ural watercourse, and to say that this place, called by the witnesses Barnfield branch, is not such. The definition given in the prayers for instructions seems to be accurate enough, that it is a way or course worn by water making its way naturally on the surface, and so making for itself a defined channel, having banks in which it naturally flows. And I am also inclined to the opinion that, in the evidence, Barn-field branch is no such watercourse as this; but I do not deem it necessary for the jury or the Court to determine this question, because, in the opinion of the Court, whether Barn-field branch be a natural watercourse, or a ravine, or depres-sion in the earth, draining any considerable portion of land and carrying off any considerable amount of water, the result is the same, as far as it affects the case, and I charge you that, if you find, from the evidence, that this branch was

a depression of low land making out from Great Swamp at a point three or four hundred yards below the defendant's road, and having its natural outlet at that point, and, diverging from the swamp, continues its course until it terminates at the foot of a hill eighteen hundred feet, or six hundred yards above defendant's road, crossing the road at a distance of about two hundred yards from the swamp, and being six hundred yards across where it terminates, and separated from the swamp along its route by a sandhill or ridge two feet high and thirty or forty yards across, and being at the extreme southern line of plaintiffs' tract, and located partly on adjacent lands, the defendant, unless the safety of the road required it, would have no right to divert the drainage of the branch from its natural outlet and turn the waters of the same, by lateral ditches, onto plaintiffs' land, and if it has done so, when the proper construction of the road does not require it, and thereby caused damage to plaintiffs' lands, the defendant has committed a trespass, and the jury should answer the fifth issue 'Yes.'

"The defendant has a right to protect its roadbed and make it safe by cutting lateral ditches along the same, and where it does so for such purpose, and the protection of their road requires it, it has the right to carry the water so collected by its ditches into plaintiffs' ditches, and any increased supply of water and incidental damage thereby occasioned must be borne by plaintiffs. Such damage is included in the amount paid for their right-of-way, and for this plaintiffs cannot recover.

"And again, defendant's right-of-way protects it from damage caused by the action of surface water, when the change of grade and direction is caused by the construction of the road itself, but the defendant has no right under the protection and sanction of either principle, to so construct its natural slope and contour of the ground to any considerable extent, and so divert any considerable amount of even sur-

face or rainwater from its natural outlet into these ditches, and so cause damage to plaintiffs' land, unless the necessity for the proper construction of its road requires it. If the safety of the roadbed permits, and within reasonable limits as to cost, the defendant should make a way to pass in its natural way or outlet, and, in the present case, if such safety and expense permitted, the defendant should have placed a culvert at the point where this branch crosses the road, and so permitted the water to take its natural way; and, failing to do so, if damage is thereby caused to plaintiffs' land, the jury should answer the fifth issue ' Yes.'

" Defendant contends, and there is evidence tending to prove, that no considerable body of water comes down this depression or ravine, and that it has provided a lateral ditch fully sufficient to carry it off, that such lateral ditch is connected with plaintiff's main ditches and as a matter of fact the plaintiff has now a shorter and more efficient drainway than he ever had, and if such is the case, if the body of the water diverted is not considerable, or defendant has by its lateral ditches provided equally good drainage for plaintiffs, or has provided sufficient drainage, then defendant has done the plaintiffs no damage, and you will answer the fifth issue 'No.' You will consider the evidence on this issue under the rules here given, and write your answer to this issue 'Yes' or 'No,' as you may decide the question. On the matter of damage, if you should answer the third, fourth and fifth issues 'No,' that defendant has done the plaintiffs no actionable wrong, then you need not consider the remaining issues. If, however, you answer either of these issues 'Yes,' you will further consider the evidence on the question of damages. There are three sources of damage alleged, and three separate issues on the question of amount, sixth, seventh and eighth. It is desirable that you would say what damage arises as each cause you may establish. If there be more than one cause, and you cannot divide them and say how

much is caused by each, you may answer as to entire amount on the ninth issue.

" It is agreed you may determine this amount of damage and make answer on the ninth issue, and need not answer the sixth, seventh and eighth.

" The rule to guide you on this question is the same in each issue. Plaintiffs can recover the difference in rental value or net profits of the land as it is now and as it was or would have been without defendant's obstruction causing damage. The damage cannot be estimated for the time since suit began in March, 1893. There is no evidence tending to show damage commenced in 1889, indeed plaintiffs do not demand any damage back of three years. The time then covered by the suit will be the three years 1890, 1891 and 1892, and the damage is the difference in rental value caused by the defendant's obstruction.

" Defendant would not be responsible for damage by extraordinary freshets nor by damage from overflows where the damage would have occurred even if the roadbed had not been built. Nor for damage done to the land included in the right-of-way, sixty-five feet on either side of road, nor for such loss as arose from plaintiffs not keeping their ditches cleaned out, if the construction of the roadbed permitted such cleaning; nor for loss caused by general bad crops in these years common to crops in that community and not produced by the obstruction. Defendant is responsible for difference in fair rental value for these three years to the extent that such difference is caused by defendant's wrongful conduct. Now what do you determine the difference to be on the evidence? Burden here is on plaintiffs. On the part of plaintiffs Mr. Fleming and others testify as follows: 'Five barrels corn on north, three on south.'

The defendant excepted to the charge as follows:

" 1. Because his Honor charged the jury that, if they believed the evidence, the legal title and right of possession

was in the plaintiff Sidney Fleming, and that they should answer the first issue ' Yes.'

" 2. Because he charged the jury that the defendant, in his argument, consented that the jury should find the first issue in the affirmative, whereas the defendant specially requested the Court to charge to the contrary.

" 3. Because he charged the jury that, if defendant filled up plaintiffs' ditches, it was defendant's duty to provide ditches affording equally good drainage, whereas he should have charged them that it was defendant's duty to provide ditches affording sufficient drainage.

" 4  Because he charged the jury that it was not necessary to decide whether Barnfield branch was a natural watercourse.

" 5. Because he charged the jury that, whether Barnfield was a natural watercourse or ravine, or a depression in the earth, draining any considerable portion of land, carrying off any considerable amount of water, the result would be the same, as far as it affects this cause.

" 6. Because he charged the jury that this branch, if the jury believed it to be of the description set forth in the charge, could not be diverted and turned by the defendant by its lateral ditches.  .

" 7. Because he charged the jury that it was the duty of the defendant to place a culvert to take the waters of this branch its natural way.

" 8. Because he charged the jury that they need not answer the sixth, seventh and eighth issues specifically, but might aggregate the entire damage in their answer to issue No. 9."

And these errors constitute the sixth, seventh, eighth, ninth, tenth, eleventh, twelfth and thirteenth exceptions of the defendant.

During the progress of the trial the defendant proposed to prove by one Reeves, a witness in behalf of the defendant, and one of the commissioners who assessed the damages for

115—44

the right-of-way over these lands, that the commissioners
who assessed the damages were present on the land, and con-
sidered and allowed for all damages done to the land, or
likely to be done, by reason of any ponding or interruption
of water that the trestles might occasion, and at the time of
such assessment the roadbed and trestle were already
complete.

Objection by the plaintiffs. Objection sustained. Defendant
excepted.

The jury returned a verdict finding the first, second, third,
fourth, and fifth issues in the affirmative, and finding in
response to the ninth issue, $200, and making no response
to sixth, seventh and eighth issues, and from the judgment
thereon defendant appealed.

*Mr. J. B. Batchelor*, for plaintiffs.
*Mr. John L. Bridgers*, for defendant (appellant).

AVERY, J.: The rule adopted by this Court restricts the
trial Judge in settling the issues to those raised by the plead-
ings, but does not require him to frame an issue involving
the truth of every fact alleged on the one side and denied on
the other. When those submitted are raised by the plead-
ings, and with the findings upon them form a sufficient
basis for the Court to proceed to judgment, no exception to
them is available to either of the parties, unless it can be
made to appear that there was some view of the law arising
out of the testimony which the party appealing was pre-
cluded from presenting for the consideration of the jury for
want of a pertinent issue.

The question whether the culverts constructed were suf-
ficent to carry off the water was involved in the broader and
more general inquiry suggested by the third issue submitted.
If the defendant negligently constructed the culvert so as to
cause the water to be ponded on plaintiffs' land, then it was

insufficient for the purpose and the defendant was liable. It would seem impossible to conceive of any legal proposition growing out of the testimony, in reference to the culvert, that could not have been considered in passing upon the third issue, if it had been presented by the defendant in the shape of a prayer for instruction.

To build a culvert that is insufficient to carry off the water, whereby water is ponded on a complainant's land, is a wrongful and negligent construction. The gist of the controversy, or that part of it, was involved in the inquiry whether the plaintiff had been damaged by the negligent ponding of water by the defendant in constructing its road. The building of an insufficient culvert is one species of carelessness that might have been the immediate cause of such an injury. Indeed, all three of the specific allegations contained in the three separate causes of action, and constituting the grounds of complaint, to wit, first, the insufficiency of the culvert; second, the filling up of the ditches; and third, the diversion of water from its natural course so as to cause plaintiffs' land to be overflowed, might have been comprehended under one general issue as to negligent construction, and the Judge might, in his discretion, have dispensed with the fourth and fifth issues, which involved the specific allegations of negligence in the other cause of action, to wit, the filling of the ditches and the diversion of the creek.

The finding upon one general issue, involving every species of carelessness mentioned in all of the three causes of action, and the judgment thereon, would of necessity have been conclusive upon the parties as to all matters in controversy, and as to the right to recover upon any of the causes of action. Whatever might have been offered in evidence and passed upon, the law will generally presume was presented to the jury.

It being incumbent on the defendant to show that it was deprived of the opportunity to present some material view

of the law arising out of the evidence, and its counsel having failed to point out any pertinent principle of law that could not have been applied, through the medium of instruction, to the issues submitted, there is no abuse of the discretionary power of the Judge shown in framing them as he did.

The conclusion that the fifth issue is not raised by the pleadings is not tenable. The allegation in the third cause of action was that, " in the construction of said *road* the defendant dug on each side of the bed of the road a ditch, whereby a large and unusual volume of water is diverted from its natural course and turned upon the land and into the ditches of plaintiffs," etc. There was evidence that the natural course of the water alleged to have been diverted was through Barnfield branch. It would be sticking in the bark to say the issue was not raised because, on hearing the proof that water was diverted from its course, the natural course was shown to be a certain branch, and the Court specified such alleged natural outlet by name in the issue, in order more clearly to direct attention to the real subject of inquiry raised by the pleadings. The question passed upon was not whether the water of Barnfield branch was *wrongfully* and *negligently* diverted from its natural course, but simply whether it was diverted. There being " evidence tending to show that the branch was a natural waterway, and evidence to the contrary," as defendant's counsel states in his brief, he had the opportunity to request the Court to tell the jury that, if they found that the branch was not a natural channel, it was not negligent or wrongful, on the part of the company, to divert it from the ravine down which it previously ran. The question might have been raised by such a prayer for instruction, but not by objecting to the issue before or after failing to do so.

We shall have occasion, upon the consideration of another branch of this controversy, to discuss the bearing of this question whether that branch was a natural outlet.

" Such damage as is due to the erection of a waterway over

a running stream, at the point of its intersection with the line of a railway, is considered, when the work is skilfully done, as included in the cost and valuation of the easement, or to have passed as incident to a grant of it, and the fact that it was so constructed as to pass the water, even in time of ordinary freshet, being admitted, neither the owner of the *servient tenement*, nor the proprietor of a tract above can maintain an action for damages caused by placing the structure across the stream." *Adams* v. *Railroad*, 110 N. C., 725.

It was not competent, then, to prove upon what principle the commissioners estimated damages in the condemnation proceedings. The law determines what rights and privileges pass to the dominant owner, upon proof that the right-of-way was lawfully condemned for public use. One uniform rule applies in ascertaining what has passed as incidental to the acquisition of the right-of-way. The dominion and privileges of a corporation have the same limit, and are subject to the same restrictions on every part of its line, except when the right-of-way is granted by the owner with reservations, presumably allowed by reason of the exaction of a smaller consideration than would otherwise have been charged, as where the width of the way granted is to be narrower, or the company agrees to construct crossings or cattle-guards at a designated point, or in a particular manner, not otherwise required. The testimony was not competent in any point of view, but, if the undisputed evidence showed that the trestle over the Great Swamp was a sufficient waterway to discharge the water that flowed through it, except when there was an extraordinary rainfall, then it was immaterial, even if competent. *Emry* v. *Railroad*, 102 N. C., 20.9

When two of the counsel for the defendant admitted in the progress of the trial, on behalf of their client, that the plaintiffs owned and were possessed of the land, it was error in the Court to instruct the jury to respond in the affirmative to the first issue, involving the question of title and

possession. In the same way, counsel were bound by their admission that " Great Swamp was a natural watercourse and drain for said land," and were not at liberty, after the trial, to except to the instruction to the jury to write the response, in accordance with their express agreement.

The same principle applies to the consent of counsel given " in open Court, at the close of the charge, that the jury need not respond to each amount of damage separately, if more than one cause of damage was found to exist, but that they might find the aggregate amount for all causes, and respond only to the ninth issue on that question." We need do nothing more than to quote the language used by the Judge in stating this exception :

The Court told the jury, in substance, that the response to the fourth issue should be " Yes," if the defendant filled up the plaintiffs' drain ditches when it was not necessary to the proper construction of the road to do so, but if the defendant had not damaged plaintiffs' land or filled up the ditches, or in obstructing the ditches had done no injury that was not necessarily incident to a skilful construction of the road, and had provided other drains in connection with their side ditches, affording equally good drainage, the answer should be " No." We fail to comprehend how the defendant was prejudiced, as is contended in the fourth assignment of error, by the refusal of the Court to tell the jury that it was defendant's duty to provide ditches, affording " sufficient drainage," and instructing them, in lieu, that he was required only to provide ditches affording equally as good drainage. It may have been possible to provide equally as good drains as had been dug by the plaintiff, at much less cost than to construct such as would have afforded " sufficient drainage," or such as would have thoroughly prepared the land for farming. The defendant cannot justly complain because the Court held, that while it was liable for injury to the land, it was not bound to improve its condition after paying for the privilege of passing through it.

The fifth issue arising out of the third cause of action involved the question of the unlawful diversion of water (which the evidence showed referred to Barnfield branch) from its natural course. The instructions asked, and those substituted in lieu, gave rise to several assignments of error, which may be summarized as follows: That the Court erred in instructing the jury—

" 1. That it was not necessary for them to decide whether Barnfield branch was a natural watercousre or not, because the result would be the same if it was a mere depression or ravine, if it carried off a considerable amount of water from a considerable area of land, and yet expressed the opinion, founded upon the testimony, that Barnfield branch did not fall within the definition given by the Court of the natural watercourse.

" 2. That the water of Barnfield branch, according to the description incorporated into the charge, and purporting to embody testimony of witnesses relating to that subject, could not be lawfully diverted from the channel, and if the defendant had diverted it when the proper construction of the road did not require it to be done, it was guilty of trespass.

" 3. That it was the duty of defendant to have constructed a culvert at the point of intersection of said branch."

The consideration of the questions thus raised, necessarily leads to the discussion of the rights of owners of land to divert a natural stream, flowing over it, from its channel, or to collect surface water falling or flowing thereon, and discharge it by means of an artificial drain. It must be remembered, at the outset of this discussion, that "a railroad company enjoys the same privilege as any other landowner, but no greater, to be exercised under the same restrictions and qualifications." *Staton* v. *Railroad*, 111 N. C., 278; *Jenkins* v. *Railroad*, 110 N. C., 438. This principle is subject to the qualifications that necessarily arise out of the fact that such companies usually acquire not the absolute ownership, but a dominion for corporate purposes, conferred with the

paramount object of benefit to the public. One of the privileges, passing as an incident, is of course that of constructing such embankments as may be needed to insure the safety of transportation. The principle is stated by Gould, in his work on Waters, section 273, as follows: "Damages caused by the displacement or obstruction of surface water may be included in the assessment of damages under the statute caused by the original construction of the road;" but the author adds in the same section, "A railroad corporation has no right, by the erection of embankments, the construction of culverts, or the digging of ditches, to collect and discharge unusual quantities of surface water upon adjoining lands." In *Staton* v. *Railroad*, 109 N. C., 337, the late Chief Justice MERRIMON said: " Unquestionably, the defendant had the right to cut through and along its right of-way and keep in repair such appropriate ditches and culverts as were necessary to carry off the surface water to a natural drain or outlet adequate to receive it." In *Porter* v. *Durham*, 74 N. C., at page 67, the Court said: " It has been held that an owner of lower land is obliged to receive the surface water which falls on adjoining higher land, and which naturally flows on the lower land. Of course, when the water reaches his land the lower owner can collect it in a ditch and carry it off to a proper outlet, so that it will not damage him. He cannot, however, raise any dyke or barrier by which it will be interrupted and thrown back on the land of the higher owner. While the higher owner is entitled to this service, he cannot artificially increase the natural quantity of flow by collecting it in a ditch and discharging it upon the servient land at a different place or in a different manner from its natural discharge."

The counsel for appellant insists that the Court erred in instructing the jury that it was the duty of the defendant to provide a separate culvert to carry off the water of Barnfield branch, whether it was a natural watercourse or a

ravine or depression, through which the surface water falling upon any considerable area of land was drained. If it was a natural watercourse, then by diverting it from its channel above the railroad, unless it was necessary to do so in order to make the best provision for the safety of passengers and property to be transported over the road, the defendant company incurred liability for at least nominal damages and for such actual damage for overflow as was caused to the plaintiffs' land above the railroad or below it. *Adams* v. *Railroad, supra,* at p. 332. But leaving the question whether what was called Barnfield branch was only a ravine which served the purpose of discharging the surface water from a large area or a natural outlet an open one, the Court charged the jury, among other things, as follows: " If the safety of the roadbed permits, and within reasonable limits as to costs, the defendant should make a way for water to pass in its natural way or outlet, and in the present case, if such safety and expense permitted, the defendant should have placed a culvert at the point where this branch crosses the road and so permitted the water to take its natural way, and failing to do so, if damage is thereby caused to plaintiffs' land, the jury should answer the fifth issue (which involved the question of the wrongful diversion of Barnfield branch, etc.,) 'Yes.'" The jury, therefore, acted upon the idea that if the construction of the culvert would not imperil the safety of passengers and freight transported over the line, and the cost would be, in the opinion of the jury, reasonable, they must find that the company was negligent in failing to provide the culvert, even though Barnfield branch was not a natural watercourse, but only a depression extending across the line of railroad and well defined, both where it entered, and where, in high water, it emerged on the other side from the Great Swamp. It is difficult to obtain from the evidence and charge a very clear idea of the topography ; but the charge in its application to the testimony must be construed

to mean what we have stated. The general rule, clearly deducible from the authorities cited, is that the diversion of a natural stream from its channel by a railroad company is always deemed a trespass when it is not necessary to the skillful construction of its road to change its course. *Adams* v. *Railroad, supra.* But it is equally well settled that generally the lawful authority to divert surface water accumulating at a proper embankment, the building of which was necessarily within the contemplation of those who assessed or agreed upon the cost of the right-of-way, and to carry it in side ditches constructed on the right-of-way, to its natural outlet, or to some natural "outlet adequate to receive it," is included in the estimate of such cost. *Staton* v. *Railroad, supra;* Gould *supra.* We are not prepared to hold, upon any view of this testimony, that the channel of Barnfield branch was a depression of such a character that though it discharged only surface water, it nevertheless came within the reason which induced the Courts to hold it an actionable injury to close a ravine and pond back on the abutting owners of land or carry to a suitable outlet by side ditches the water that usually escapes through it, though some of the Courts of this country, with the approval of respectable text-writers, have held that deep depressions in a hilly region through which the water from large areas is discharged sometimes fall within the reason of the rule, and that in such cases the duty, when railroads cross them, is the same as if the crossing were over a branch flowing from a perennial spring. Gould, *supra,* section 273. But after the Judge had told them that in no view of the testimony did the Barnfield branch fall within the abstract definition of a watercourse previously given, he further instructed them that it was the duty of the company to have put in the culvert, unless the cost would have proved unreasonable or its construction would have made the road unsafe. Some of the witnesses had testified without objection that the branch was a natural

watercourse; others had stated facts which, if believed, would lead to the inference that it was not. Though it may not have been material in discussing the question to which the Court had previously adverted, to adopt the instruction as to the nature of natural watercourses, to the evidence, it was manifestly erroneous, in view of the conflicting testimony on which the defendant's liability depended, to express the opinion that the branch was not a natural watercourse. *The Code*, sec. 413, and cases cited on page 389 of Clark's Code. This error was covered by the exception to the instruction asked and to that given, in lieu. But we see nothing in the testimony to take this case out of the general rule which permitted the defendant to divert the surface water collected above an embankment constructed skillfully, and in the exercise of authority acquired as an incident to the right-of-way, along its ditches to its natural outlet, at a different place from its previous entrance through a depression, but at a point where it was amply sufficient to receive such water. In giving the instruction that it was the duty of the defendant to build a culvert over what was known as Barnfield branch, as well as in expressing the opinion, where the evidence was conflicting upon the question, that it was not a natural stream, there was error, for which a new trial must be granted. It would seem, also, that in response to the prayers more specific instructions adapted to the testimony should have been given as to the character of the branch. We have discussed the main questions as to which we approve of the rulings of the Court, because it may be important to do so in order to aid the Court in the next trial.

New Trial.