# SUPREME COURT

OF

# NORTH CAROLINA

AT RALEIGH.

## FALL TERM, 1908.

H. T. DAVENPORT v. NORFOLK AND SOUTHERN AND SUFFOLK AND CAROLINA RAILROAD COMPANIES.

(Filed 16 September, 1908.)

1. **Railroads—Right of Way, Construction of—Improper Drainage—Damages.**

   A railroad company is liable in damages for negligently and improperly stopping the drain ditches on plaintiff's land, so as to injure his crop by the water flowing thereon from his own and adjoining lands, incidental to the building and ditching of its roadbed, though the right of way through plaintiff's land may previously have been purchased or regularly acquired by condemnation proceedings.

2. **Same—Evidence—Instructions—Accumulated Waters.**

   In an action for damages to crops, brought against railroad companies, incident to the negligent construction of the companies' roadbed, whereby the crops of plaintiff were injured by the usual flow of water upon his own and from upper and adjoining lands, there was evidence tending to show that, prior to the building of the roadbed, plaintiff's land was drained by a number of lead ditches into which a number of smaller ditches on his land emptied; that defendants, in constructing their roadbed, crossed all these ditches, leaving openings with pipes in them for the drainage of the lead ditches, but closing the smaller ditches; that for the increase of flow of the water caused by the ditching and construction of the roadbed the pipes for carrying the water off in the lead ditches were insufficient: *Held*, (1) the trial Judge properly instructed the jury, if they believed the evidence, to

award damages in full compensation for the injury arising in consequence of the stoppage of the small ditches, and that the openings for the passage of water through the lead ditches should have been sufficient to allow the water to pass through, with adequate piping, and the ditches should have been properly opened for the passage of the water; (2) that defendants had the right to cut a ditch, when necessary, from adjacent lands along their roadbed across plaintiff's land, but it was the duty of the defendants to have the leading and lateral ditches of sufficient capacity to carry off the additional quantity of water thereby caused to flow on plaintiff's land.

3. Same.

A prayer for instruction that a railroad company, in constructing its roadbed, had the right to accumulate the water which would naturally flow onto plaintiff's lands and convey the same by lateral ditches in and upon his lands, concluding "and for damages incident to this right no recovery can be had," is erroneous, when there is evidence tending to show that there was no sufficient drainage provided by the defendants for carrying it off.

4. Evidence, Opinion—"Expert Testimony" Upon the Facts—Improper Drainage—Damages to Crops.

Testimony of a witness who has had personal observation of the facts, and from practical training and experience is qualified to give an opinion thereon, is competent to show the damage to his crop by reason of an overflow of water on his land, caused by improper construction by defendants of their roadbed thereon, and he may testify to the number of acres in cultivation of each kind of crop, the amount of each he would have made except for the injury, and the price for which he could have sold it.

ACTION to recover damages for alleged negligent construction of the roadbed of defendant companies, tried before *Cooke, J.,* and a jury, at Spring Term, 1908, of TYRRELL.

There was evidence tending to show that defendant companies, having condemned a right of way, proceeded to construct their roadbed through the lands of plaintiff, and that such roadbed crossed a number of lead ditches made by plaintiff for the proper drainage of his lands, and also a number of tap ditches conveying the water of said land to the lead ditches at various points below the defendants' roadbed; that defendants constructed culverts or put in pipes at the points where these lead ditches had passed under the roadbed, but did not

make any such drainage for the tap ditches, but, in construct-
ing their roadbed, by lateral ditches the water which had been
carried by these tap ditches, and also some water from adja-
cent lands, was conveyed along the side of the roadbed into
the lead ditches, and by reason of the increase of water the
culverts were not sufficient to carry off the waters of the usual
and ordinary rains falling in the vicinity, and by reason of
this defect these waters were ponded back upon the lands of
plaintiff, causing much damage and injury to plaintiff's lands
and the crops growing thereon.

The plaintiff, testifying to his alleged injury and the cause
thereof, among other things, said: "The water on the north
side of the railroad drains southwardly to a swamp. My
land lies between the letters 'A' and 'D' on the map. Before
the railroad was constructed my ditches ran just as they do
now. The railroad cut ditches on each side of the track and
threw up an embankment or roadbed, and that caused all the
tap ditches to fill up, only leaving open the lead ditches at
'A,' 'B' and 'C.' The water before that time went south-
wardly and was carried off by the lead ditches and tap ditches
which drained my land. I cleaned out these ditches in 1893.
My father and myself were renters of the land, and I pur-
chased it in 1897. From 1897 we made good average crops
for that time. Before the railroad cut the ditches none of
the water east of 'D' or west of 'A' came down on my land,
but since then the water for a distance of half a mile east of
'A' has come down on my land, and when there has come a
big rain it would come down from east of 'D.' I think the
roadbed is from two to three feet high. The land on both
the east and west sides of my land is higher than mine, and
the fall of the land is from the north. The conditions, as
changed by the railroad, have greatly increased the flow of
water on my land, and, the culverts not being sufficient to take
it off promptly, the water ponded on my land, and on the
south side the ditch would not be sufficient to hold the water.

148—19

I have seen the water so high that it flowed over the top of the railroad. In 1906 I had in cultivation about 180 acres of corn, cotton, peas and sweet potatoes. There were 68 acres of cotton, 80 in corn, 5 in potatoes and the balance in peas."

Witness was here asked: "If the railroad company had left open your drainage as it was before they went there, how much crop would you have made in 1906?" To this question and the testimony in response thereto defendants objected; objection overruled; exception. (Exception 1.)

The witness answered: "I would have made a quarter of a bale of cotton per acre, and I only made seven bales on the 68 acres. Cotton was worth 10 to 11 cents per pound, and the bales weighed 500 pounds each. I would have made three barrels of corn per acre, and only made fifty barrels on about 80 acres. Corn was worth $4 per barrel. The stock peas were not damaged so much. The potato crop was a failure."

Issues were submitted, and responded to by the jury, as follows:

1. "Was the railroad of defendants negligently constructed, and if so, was water thereby ponded on the lands of plaintiff, as alleged?" Answer: "Yes."

2. "If so, what damage to his lands and crops has plaintiff sustained thereby?" Answer: "Fifteen hundred dollars."

3. "Has the cause of any injury to plaintiff's land in respect to drainage and as complained of by plaintiff been removed, and if so, when?" Answer: "Yes; 28 January, 1908."

Motion for new trial by defendants for error of the court in its ruling on the question of evidence as above indicated, and for errors in the charge. Motion overruled, and defendants excepted. Judgment on verdict for plaintiff, and defendants excepted and appealed.

*Aydlett & Ehringhaus* for plaintiff.
*Small, MacLean & McMullen* for defendants.

HOKE, J., after stating the case: In *Mullen v. Canal Co.,* 130 N. C., 496, a case concerning chiefly the rights acquired by condemnation proceedings, *Douglas, J.,* delivering the opinion of the Court, on page 503, said: "It is well settled that no damages are contemplated in the original condemnation, except such as *necessarily* arise in the proper construction of the work." And in *Adams v. Railroad,* 110 N. C., 325, *Mr. Justice Avery,* in declaring the same doctrine, page 330, said: "Whether an easement passed by private sale or condemnation, the estimate of its value is presumed to be made in contemplation of the observance on the part of the corporation of the golden maxim of the law, by so exercising its privilege as to inflict no unnecessary injury on the servient owner. Lewis on Eminent Domain, 571; Angell on Water Courses, 97; *ib.,* 95, 95a; *Lillotran v. Smith,* 32 N. H., 94; *Embry v. Owen,* 6 Exc., 369; *Pugh v. Wheeler,* 19 N. C., 50; *Walton v. Mills,* 86 N. C., 280; *Wilhelm v. Burleyson,* 106 N. C., 389; Gould on Waters, 209, 214, 401, 405; *Hasher v. Railroad,* 60 Mo., 329; *Curtis v. Railroad,* 98 Mass., 428; *Lawrence v. Railroad,* 71 C. L. Repts., 643; Mills on Em. Domain, 81 (p. 220); *Munken v. Railroad,* 72 Mo., 514; *Railroad v. Wicker, supra."* And, further, on page 331: "It being admitted as a general rule that such injuries to the servient tenement as are necessarily incident to a skillful construction of the road are considered as included in the compensation for the easement, it is clear that the skill is not to be measured by the cost of the structure alone, but by its completion upon such a location and in such a manner as to provide for the public safety and convenience without unnecessary injury to the land subject to the servitude. When the attempt is made to draw and define the line of legal right between two such conflicting claimants, it is essential always to recur to the rule, *Sic utere, ut non alicnum lœdas,* as the touchstone by which the culpability of conduct is to be determined. The persons who fixed the

cost of the easement contemplated the building of the structure with an eye to the safety and convenience of the public and subject to this controlling purpose, with a proper regard for the rights of the servient as well as dominant owner."

Applying these principles, it is generally held that, for damages incident to negligent construction of a company's road, recovery may be had, though a right of way has been purchased or regularly acquired by condemnation proceedings. The Judge below, having properly informed the jury of this general principle and framed the issue so as to enable them to determine the precise question, among other things and on this issue, charged the jury: "If the jury believe the evidence, there were certain lead ditches upon the plaintiff's land indicated at 'A,' 'B,' 'C,' 'D' on the map, and there were also a number of smaller ditches, called tap ditches, which emptied into the lead ditches. The railroad crossed all these ditches and provided no opening for the tap ditches, but did leave openings for the lead ditches, in which openings they placed pipes and cut ditches on each side of the railroad on its right of way for the purpose of carrying off the water that was brought by the small ditches into the lead ditches, as well as the other water; and, this being the scheme of the defendants, it must have been in full compensation for the stoppage of the small ditches and as effective as if said small ditches had been left open, and the opening for the passage of the lead ditches must have been sufficient to allow the water to pass through, and the piping put in them must have been sufficient for the purpose and the ditches properly opened for the passage of the water." And, in reference to the water which the evidence tended to show the lateral ditches had carried into the lead ditches from adjacent lands, the court further charged the jury on the issues as follows: "If the water before drained towards the plaintiff's land, and if it was necessary in order to drain the railroad track to cut the ditches from the ad-

jacent lands across the plaintiff's land, then the defendants had the right to make a continuous ditch from the said adjacent land on one side across the plaintiff's land and upon the adjacent lands on the other side; but if the jury shall find that this was done, then it was the duty of the defendant companies to have the ditches, both lateral and lead, of sufficient capacity to carry off this water, in addition to that which would be upon the land without this change. And if the jury shall find that the defendants failed to perform their duty, as explained to you above, and as a consequence of such failure the plaintiff's lands were flooded and damaged, then the jury should answer the first issue 'Yes'; if they shall not so find, they should answer the first issue 'No.'"

This, we think, is a just rule by which the rights of these parties should be determined, and is in accord with numerous decisions of this Court on the subject. *Mullen v. Canal Co., supra; Parker v. Railroad,* 123 N. C., 71; *Parker v. Railroad,* 119 N. C., 677; *Fleming v. Railroad,* 115 N. C., 676; *Staton v. Railroad,* 109 N. C., 337; *Emery v. Railroad,* 102 N. C., 209; *Railroad v. Wicker,* 74 N. C., 220; *Porter v. Durham,* 74 N. C., 767.

In *Emery's case, supra,* it was held: "6. It is the duty of a railroad company to so construct its culverts that they will carry off the water of the streams over which they are built under all ordinary circumstances likely to occur in the usual course of nature, including such heavy rains as are ordinarily expected, although of only occasional occurrence. But it is not liable for damages resulting from its culverts being insufficient to carry off the overflow caused by extraordinary and unusual rainfalls." And in *Wicker's case* the principle was held to apply both to "natural and artificial drainways."

A perusal of these authorities fully sustains the charge of the court and the principles applied by him in the trial of the cause.

Defendants in apt time presented several prayers for instructions, embodying the position, as we understand them, that if the lands of plaintiff were lower than the adjacent lands on either side of same the defendants would have the right to accumulate the water which would naturally flow on plaintiff's lands and convey the same by lateral ditches in and upon the lands of the plaintiff, and for damages incident to the exercise of their right no recovery could be had. The court gave the first part of the prayer, but declined to give the latter part of the instruction, to the effect "that no recovery could be had," and this was as favorable to defendants as they had any right or reason to expect. Conceding that the defendants, if the proper construction and safety of their roadbed required it, had the right to convey the water in question by lateral ditches to the lead ditches of plaintiff, the grievance is not that they carried it there, but that no sufficient culvert or drainage was made to carry it off. And this being a duty encumbent on the defendants, under the authorities cited, for damages arising from the negligent breach of such duty, recovery could be had, notwithstanding the acquisition of the right of way.

The exception urged for error, that the plaintiff, Davenport, testifying on his own behalf, was allowed to answer the question, "If the railroad company had left open your drainage as it was before they went there, how much crop would you have made in 1906?" cannot be sustained. This, though often expressed in the form of opinion, is an estimate given by a witness who had personal observation and cognizance of the conditions, and should be considered as the statement of a fact. It is the witness' impression, from conditions actually observed and noted by him. Even if it should be regarded as more strictly "opinion evidence," when it comes from a source of this kind, from one who has had personal observation of the facts, and from practical training and experience is qualified to give an opinion which is likely

to aid the jury to a correct conclusion, such evidence is coming to be more and more received in trials before the jury. McKelvey speaks of it with approval as "expert testi-. mony on the facts." McKelvey, p. 230.

The testimony offered and admitted comes, we think, within this principle, and its admission is sustained by well-considered decisions in this and other jurisdictions. *Wade v. The Telephone Co.,* 147 N. C., 219; *Britt v. Railroad, ante; Taylor v. Security Co.,* 145 N. C., 385; *Sikes v. Paine,* 32 N. C., 280; *Eldridge v. Smith,* 95 Mass., 140.

After giving the case most careful consideration, we find no error in the record, and the judgment below must be affirmed.

No Error.